IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| PHILADELPHIA INDEMNITY INSURANCE COMPANY,<br>    Plaintiff,<br>    v.<br>AGCO CORPORATION, et al.,<br>    Defendants. | CIVIL ACTION FILE<br>NO. 1:10-CV-4148-TWT |

ORDER

This is a declaratory action arising out of an insurance coverage dispute. It is before the Court on the Plaintiff's Motion for Summary Judgment [Doc. 36] and the Defendants Glynn General Purchasing Group, Inc. and Warranty Specialists, Inc.'s Motion for Summary Judgment [Doc. 75]. For the reasons set forth below, the Court GRANTS the Plaintiff's Motion for Summary Judgment [Doc. 36] and DENIES the Defendants' Motion for Summary Judgment [Doc. 75].

I. Background

In 2005, AGCO Corp. ("AGCO") entered into a warranty agreement (the "Agreement") with Glynn General Purchasing Group, Inc. ("Glynn") and Warranty Specialists, Inc. (collectively "Glynn General"). AGCO produces and sells

agricultural equipment. The Agreement provided that Glynn would administer extended warranty claims related to certain AGCO products. Lloyd's Syndicate No. 5820, d/b/a Cassidy Davis ("Cassidy Davis") underwrote and funded the warranty claims under the Agreement.

Glynn General began administering claims under the Agreement in 2007. On September 29, 2008, however, Cassidy Davis directed Glynn General to stop paying warranty claims under the Agreement [Doc. 36-10]. Although Cassidy Davis resumed paying non-wheel motor claims, it never resumed funding wheel motor claims. AGCO has not paid any premiums under the Agreement since Glynn General and Cassidy Davis stopped paying wheel motor claims. On October 20, 2008, AGCO sent a letter to Glynn General attempting to resolve the dispute [Doc. 36-17]. On November 24, 2008, AGCO sent another letter to Jock Cockroft, the president of Warranty Specialists [Doc. 36-18]. The letter demanded that Warranty Specialists resume payment of suspended claims on AGCO equipment immediately. Id. Further, the letter stated:

> If you, as President, are unwilling to make a decision for Glynn General, then the only conclusion that we can draw is that you and Glynn General intend to cause harm to AGCO. If that is the case, AGCO will seek recovery of any and all damages that may be caused by Glynn General's intentional infliction of financial harm upon AGCO's business and interference with AGCO's business expectancies.

Id. Finally, on March 13, 2009, Cassidy Davis sent an email to Glynn General confirming its denial of all wheel motor claims [Doc. 36-20]. Glynn General forwarded the email to AGCO on the same date.

On March 9, 2009, Warranty Specialists applied for a claims-made professional liability insurance policy issued by Philadelphia Indemnity Insurance Company ("Philadelphia Indemnity"). The application included the following questions:

> 22. Have any claims, suits, or demands for arbitration been made against the Applicant, its predecessor(s) or any past or present principal, partner, officer or employee within the past five (5) years?
>
> . . .
>
> 23. Having inquired of all principals, partners and officers, are you aware of any act, error, omission, unresolved job dispute or any other circumstance that is or could be a basis for a claim under the proposed insurance?

[Doc. 36-22]. Warranty Specialists answered "no" to both questions. Id.

On March 17, 2009, Philadelphia Indemnity issued a claims-made insurance policy to Warranty Specialists (the "Policy) [See Doc. 36-21]. The Policy lists Warranty Specialists as the named insured and had a policy period of March 17, 2009 through March 17, 2010. Under the Policy, Philadelphia Indemnity agreed to pay:

> damages resulting from any claim first made against you during the policy period or any subsequent extended reporting period arising out of a wrongful act committed after the retroactive date stated in item 6. of the Declarations and prior to the end of the policy period.

Id.  The Policy defines "wrongful act" as a "negligent act, error, or omission committed or alleged to have been committed by you . . . in the rendering of professional services."  (Id.)  Further, under the Policy, "Claim means a *demand* received by you for money or services, including the service of suit or institution of arbitration proceedings involving you arising from any alleged wrongful act. Claim shall also include any request to toll the statute of limitations relating to a potential claim involving an alleged wrongful act." Id. (emphasis added).  "Claims based on or arising out of the same act or circumstance, or a series of similar or related acts or circumstances shall be considered a single claim." Id.

On June 26, 2009, AGCO filed suit against Glynn and Cassidy Davis in the Superior Court of Gwinnett County (the "Underlying Action").  See AGCO Corp. v. Glynn Gen. Purchasing Grp., Inc., No. 09-A-05901-3.  (See Compl., Ex. 1.) On February 5, 2010, AGCO amended the Underlying Action to add Warranty Specialists as a defendant.  In the Underlying Action, AGCO alleges that Glynn General breached its agreement to provide and administer extended protection plans and warranties for AGCO's agricultural equipment.  (Id.)  Specifically, AGCO contends that Glynn General wrongfully denied wheel motor claims, failed to procure insurance for those claims, fraudulently induced AGCO into entering the Agreement, and wrongfully accepted premiums. Id.

On December 21, 2010, the Plaintiff filed this lawsuit under the Declaratory Judgment Act. See 28 U.S.C. § 2201, *et seq.* Philadelphia Indemnity seeks a declaration that it owes no duty to defend or indemnify Glynn General under the Policy [Doc. 1]. On May 27, 2011, the Plaintiff filed a Motion for Summary Judgment [Doc. 36]. Philadelphia Indemnity argues that the claims at issue in the Underlying Action are not "wrongful acts" and were not made during the policy period. Glynn General and Warranty Specialists have also filed a Motion for Summary Judgment [Doc. 75]. The Defendants contend that Philadelphia Indemnity owes a duty to defend the Underlying Action under the Policy and that a determination of its duty to indemnify is premature.

## II.  Summary Judgment Standard

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The court should view the evidence and any inferences that may be drawn in the light most favorable to the nonmovant. Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). The burden then shifts to the nonmovant, who must go beyond

the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

### III.  Discussion

Philadelphia Indemnity argues that there is no coverage under the Policy because the claims at issue were not made during the policy period. In Simpson & Creasy, P.C. v. Continental Casualty Co., 770 F. Supp. 2d 1351 (S.D. Ga. 2011), an insured sought coverage under a professional liability policy for a legal malpractice claim. The policy covered "those claims that are both first made against the insured and reported in writing to the [insurer] during the policy period." Id. at 1353. The policy defined "claim" as "a demand, including the service of suit or the institution of any alternative dispute resolution proceeding, received by the Insured for money or services arising out of an act or omission, including personal injury, in the rendering of or failure to render legal services." Id. at 1355. Before the policy period, the insured's client had requested that the insured return her client file. The client also requested that the insured retitle certain assets in the client's name. The court noted that although the policy did not define "demand," the term ordinarily meant "[t]he assertion of a legal or procedural right." Id. at 1356. Based on this definition, the court held that the client's request to retitle assets and return her files constituted a

demand. Thus, the client's "claim" had been made before the policy period began. Id. at 1357.

Here, as in Simpson, the Policy provides coverage for "claims first made against [Warranty Specialists] during the policy period" [Doc. 36-21]. See Simpson, 770 F. Supp. 2d at 1355 (quoting Tripp v. Allstate Ins. Co., 262 Ga. App. 93, 96 (2003)) ("Where the terms of an insurance contract are unambiguous, as is the case here, 'the plain meaning of such terms must be given full effect, regardless of whether they might be beneficial to the insurer or detrimental to the insured.'"). The Policy period is March 17, 2009 through March 17, 2010. Id. Further, as in Simpson, the Policy defines "claim" as "a *demand* received by you for money or services, including the service of suit or institution of arbitration proceedings involving you arising from any alleged wrongful act." Id. (emphasis added). "Claims based on or arising out of the same act or circumstance, or a series of similar or related acts or circumstances shall be considered a single claim." Id.

On November 24, 2008, AGCO's general counsel sent a letter to Warranty Specialists demanding "that [Warranty Specialists] decision any suspended claims on AGCO equipment immediately" [Doc. 36-18]. The letter also threatened legal action against Warranty Specialists and its president. As in Simpson, this request constitutes a "demand for services." Simpson, 770 F. Supp. 2d at 1357. Thus, the claim at issue

in the Underlying Action was made on November 24, 2008, more than three months before the policy period began. Finally, all claims related to the denial of wheel motor warranty claims under the Agreement constitute "a series of similar or related acts or circumstances" [Doc. 36-21]. Thus, these claims are considered a single claim under the Policy. For these reasons, Philadelphia Indemnity owes no duty to defend or indemnify for any claims resulting from Glynn General's denial of wheel motor claims.

Next, Philadelphia Indemnity argues that there is no coverage under the Policy because Warranty Specialists answered questions on the Policy application untruthfully. The Policy application included the following questions:

> 22. Have any claims, suits, or demands for arbitration been made against the Applicant, its predecessor(s) or any past or present principal, partner, officer or employee within the past five (5) years?
>
> . . .
>
> 23. Having inquired of all principals, partners and officers, are you aware of any act, error, omission, unresolved job dispute or any other circumstance that is or could be a basis for a claim under the proposed insurance?

[Doc. 36-22]. On March 9, 2009, Warranty Specialists answer "no" to both questions. Id. Below those questions, the application stated:

> With regard to questions 22. and 23., it is understood and agreed that if any such claim, act, error, omission, dispute or circumstance exists, then such claim and/or claims arising from such act, error, omission, dispute

>or circumstance is excluded from coverage that may be provided under this proposed insurance and, further, failure to disclose such claim, act, error, omission, dispute or circumstance may result in the proposed insurance being void, and/or subject to rescission.

Id. Philadelphia Indemnity contends that at the time Warranty Specialists completed the application, AGCO had made a demand against Warranty Specialists.

As discussed above, AGCO's November 24th letter was a demand that should have been disclosed on the Policy application. Thus, this claim is not covered under the Policy. Similarly, Philadelphia Indemnity contends that Warranty Specialists knew of a dispute that "*could* be a basis for a claim under the [Policy]" [Doc. 36-22]. AGCO's November 24th letter explicitly threatened that it would "seek recovery of any and all damages that may be caused by [Warranty Specialists'] intentional infliction of financial harm upon AGCO's business and interference with AGCO's business expectancies." Id. Whether or not Warranty Specialists believed that a lawsuit would ultimately result, it knew that the dispute with AGCO *could* result in a claim. For this reason, Philadelphia Indemnity owes no duty to defend or indemnify for any claims resulting from Glynn General's failure to administer claims under the Agreement.

Finally, Philadelphia Indemnity contends that the Underlying Action is not a "wrongful act." The Policy defined "wrongful act" as a "negligent act, error, or omission committed or alleged to have been committed by you . . . in the rendering

of professional services" [Doc. 36-21]. The Plaintiff contends that Glynn General's refusal to pay wheel motor claims, failure to obtain insurance for those claims, and fraudulent misrepresentations were intentional, not negligent, acts.

In <u>Georgia Farm Bureau Mutual Insurance Co. v. Meriwether</u>, 169 Ga. App. 363 (1983), the insured sought coverage under an insurance policy. The policy provided coverage for damage caused by an "occurrence." <u>Id.</u> The policy defined "occurrence" as "an *accident* . . . which results in bodily injury or property damage." <u>Id.</u> (emphasis in original). In the underlying suit, the plaintiff contended that the insured had erected a fence blocking a public road. There was, however, "substantial dispute as to whether [insured] blocked a public road or a private farm road." <u>Id.</u> Thus, "a question would exist in [the underlying] lawsuit against [the insured] as to whether [the insured] has any liability to the plaintiffs in that action." <u>Id.</u> The court held, however, that the underlying claim against the insured was not an occurrence under the policy. The court reasoned that "there is no dispute in the present action concerning the fact that [the insured] *intentionally* blocked the disputed way." <u>Id.</u> (emphasis added). Thus, the claim was not an "accident" covered under the policy.

Here, as in <u>Meriwether</u>, Glynn General's decision not to insure or administer wheel motor claims was intentional. Glynn General, however, argues that it failed to procure insurance because it negligently determined that insurance for wheel motor

claims was not required under the Agreement. Although Glynn General's *interpretation* may have been negligent, its decision not to insure or administer wheel motor claims was intentional. Indeed, Glynn General's conduct was intentional precisely *because* it analyzed its obligations under the Agreement and consciously decided not to acquire insurance or pay certain claims. Glynn General's rationale for denying wheel motor claims is irrelevant to AGCO's claims in the Underlying Action. Thus, even if Glynn General's legal analysis regarding the Agreement was negligent, the fact that Glynn General considered its legal obligation before ceasing payment indicates that its behavior was intentional.[1] The Policy only covers "*negligent* act[s], error[s], or omission[s]" [Doc. 36-21] (emphasis added). For that reason, Philadelphia Indemnity owes no duty to defend or indemnify Glynn General in the Underlying Action.

## IV. Conclusion

For the reasons set forth above, the Court GRANTS the Plaintiff's Motion for Summary Judgment [Doc. 36] and DENIES the Defendants' Motion for Summary Judgment [Doc. 75].

---

[1] By contrast, AGCO does not assert that Glynn General negligently failed to administer claims because of incompetence or accidental neglect.

SO ORDERED, this 23 day of March, 2012.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge